CROWELL, *App't,* v. LONDONDERRY.

Under Gen. Laws, c. 49, s. 2, authorizing a town to take land for a public cemetery without the owner's consent, when "land necessary therefor cannot be obtained in any suitable place at a reasonable price by contract with the owner," the most suitable land may be taken when it cannot be obtained at a reasonable price by contract.

The statutory provision, that no cemetery shall be laid out within twenty rods of a dwelling-house, does not prohibit the taking of a dwelling-house and the land on which it stands.

At a trial before a board of selectmen on a petition for laying out a public cemetery, the objection that a member of the board is disqualified by his relationship to one of the petitioners is waved by a land-owner having knowledge of the fact, and going to trial on the merits of the petition without presenting the objection to the board.

The objection that notice of the trial was not given to the town-clerk is waived by a land-owner who has had notice, and does not present the objection to the board.

A public cemetery, legally laid out by a town exercising the power of eminent domain, cannot be discontinued by major vote of the town.

APPEAL from the laying out of a cemetery on the plaintiff's land by the defendants' selectmen. There was another appeal of the plaintiff from the action of the selectmen laying out a cemetery at the same place on a second petition. Both appeals were referred to the county commissioners.

*C. R. Morrison,* with whom were *Frink & Batchelder,* for the defendants. If our case required it, we should ask the court to overrule so much of *Railroad* v. *Enfield,* 57 N. H. 510, as holds that, upon an appeal, other objections than those set out in the appeal may be made to the laying out. That decision gives no force to apparently material words not found in the act of 1862 (which was the first law authorizing a land-owner to appeal from a laying out), but inserted in Gen. St., c. 63, s. 12, as they now appear in the General Laws. By the act of 1862 the commissioners were to "pass upon the question of the laying out of said highway, and the amount of damages to the several land-owners, and according to their report the court may order the decision of the selectmen to be reversed, or affirmed, as the case may be, " while, by the General Statutes, they were to " consider and report upon the matters in regard to which the appeal was taken as set forth in the petition; and the decision of the selectmen may be affirmed, modified, or reversed by the court, according to the report of the commissioners." Now, by what rule of construction are the words, " as set forth in the petition," to be deemed superfluous or

inoperative ?   Moreover, such a decision is against public policy. Petitioners for a highway or cemetery ought to be informed within the time limited by the statutes what are the supposed objections to the laying out, that they may decide whether to yield to them and begin over again, or maintain their ground.   The public, too, who may need the road or cemetery, ought to have all the objections stated within the prescribed time, and not be kept out of needed use by months, and possibly years, of fruitless litigation, and in the end be defeated upon some ground not going to the merits of the question of taking the land.   Although, in the absence of other remedies, an illegal laying out by selectmen may be quashed upon *certiorari*, the writ will be refused where the court can see that no substantial injustice has been done.   *Railroad* v. *Folsom*, 46 N. H. 64; *Petition of Landaff*, 34 N. H. 163, 175, 176.   So the petition for a *certiorari* should be brought as soon as the error complained of is discovered, and it may be denied if unreasonably delayed.   *Petition of Tucker*, 27 N. H. 405; *State* v. *Bishop*, 3 N. H. 312.

If, on a petition for *certiorari*, the petitioner will be confined to the case made by the petition, with stronger reason should he be thus bound upon an appeal, which is a matter of right.   Hence, we say no objections to the form of the petition should be regarded, none having been stated in the appeal.   Such objections do not go to the merit of the taking.   The parties had a full opportunity to be heard, unaffected by any defects in the petition, if there were any.   An objection of that kind, made for the first time before the commissioners, comes too late.   *Wentworth* v. *Farmington*, 48 N. H. 207 ; *Patten's Petition*, 16 N. H. 278, 281.

Yet if the first petition were before the court (as it is not), and open to any objection that could be raised to it, it was sufficient to give the selectmen jurisdiction.   It stated what the petitioners desired " with sufficient precision to enable the selectmen to act in the premises, and to make a record of their proceedings," and that was enough.   *Patten's Petition*, 16 N. H. 280.

The irregularities, if any, would be no good reason for refusing to affirm the laying out.   So far as the appeal brings up the merits of the controversy, they have been passed upon by the commissioners, and their decision is an independent judgment upon them by a disinterested tribunal.   They have found and reported " that no other location to which attention was directed for a cemetery lot in North Londonderry was so suitable and practicable, everything considered, as the Crowell lot, that there was a public necessity for the cemetery, and that Crowell refused to sell the land. These findings are sufficient to dispose of all other objections.   As stated by this court, in *Peirce* v. *Portsmouth*, 58 N. H. 311, " the original petition is not necessarily quashed for error in the proceedings before the appeal; but the whole case, so far as it is before us, is referred to the commissioners, who are to consider the

matters in regard to which the appeal is taken; and upon their report the decision of the mayor and aldermen may be affirmed, modified, or reversed."

In *Moses* v. *Julian*, 45 N. H. 52, 59, 60, it was held to be no obstacle to the trial of the will upon issues framed in this court, that the judge of probate, from whose decree establishing the will the appeal was taken, was disqualified to sit by reason of having written the will. See, also, *Hopkinton* v. *Smith*, 15 N. H. 152, 155; *Hayward* v. *Bath*, 35 N. H. 514; *White* v. *Landaff*, 35 N. H. 128, 132, 133; *Stalbird* v. *Beattie*, 36 N. H. 455; *Parker* v. *Barker*, 43 N. H. 35; *Bixby* v. *Harris*, 26 N. H. 125, 128; *Wallace* v. *Brown*, 25 N. H. 216; *Gallup* v. *Mulvah*, 26 N. H. 132; *State* v. *Wilson*, 7 N. H. 543; *Baker* v. *Merrifield*, 13 N. H. 358; *Edes* v. *Boardman*, 58 N. H. 580.

But independent of these findings by the commissioners, the objections to the action of the selectmen are untenable:

1. Two signatures in ink were enough without counting those in pencil. One would have been sufficient. Besides, the objection comes too late. *White* v. *Landaff*, 35 N. H. 128, 133; *Lord* v. *Dunbarton*, 55 N. H. 245.

2. Any objection from the relationship of McGregor's wife to one of the petitioners was waived. *Gallup* v. *Mulvah*, *supra*; *White* v. *Landaff*, 35 N. H. 132, 133; *Railroad* v. *Enfield*, 57 N. H. 508, 510; *Candia* v. *Chandler*, 58 N. H. 127, 128; *Wentworth* v. *Farmington*, 51 N. H. 128, 134, 135; *Warren* v. *Glynn*, 37 N. H. 340; *Whicher* v. *Whicher*, 11 N. H. 348, 355; *Roberts* v. *Stark*, 47 N. H. 223.

3. A formal adjournment was not necessary to enable the two selectmen to lay out the cemetery, the chairman having already refused. *Hartshorn* v. *Schoff*, 58 N. H. 197; *Hall* v. *Manchester*, 39 N. H. 301; *Butler* v. *Washburn*, 25 N. H. 251, 256; *Tyler* v. *Flanders*, 58 N. H. 371, 373.

4. There were no previous impressions that prevented the exercise of a fair judgment, and nothing in conversations upon a topic which everybody was talking about, and which had been brought up in town-meeting—that of "laying out a cemetery"—that shows any misconduct or unfairness. If such objections could avail as to the Crowell lot, they would equally defeat the laying out of any lot, either by the selectmen, or by anybody in town whom they could appoint. Greater latitude should be allowed from the necessity of the case and the unavoidable discussions which arise in an application of this character to selectmen, than in proceedings by county commissioners. But even as to these, nothing appearing here would be sufficient to set aside their report. *Peavey* v. *Wolfeborough*, 37 N. H. 288, 292; *Fox* v. *Tuftonborough*, 58 N. H. 19; *Hayward* v. *Bath*, 40 N. H. 100, 105; *Thompson* v. *Conway*, 53 N. H. 622, 626.

5. The restriction, that no cemetery shall be laid out within

twenty rods of a dwelling-house, does not forbid the taking of land
that has a dwelling-house on it and paying for it; and in some
cases this may be quite necessary. *Peirce* v. *Somersworth,* 10
N. H. 369, 375.

The building in question is not found to be a dwelling-house, it
does not appear from its description to be a dwelling-house, it is
not the property of Samuel Crowell who takes the appeal, but of
Henry Crowell, and it was placed upon the land after the making
of the petition and service upon the land-owner. These are all the
objections to the first laying out; and that being legal, the second
becomes of no consequence.

Yet, as to the second,—the fact that William S. Barker, on the
second petition, is a cousin of McGregor's wife, was no disqual-
ification. It would have been none if he had been a cousin to
McGregor, the relationship being in the fifth degree according
to the civil law, instead of the fourth, which is as far as our court
has gone. Besides, the petitioners before the appeal had no more
interest than the public generally. *Sanborn* v. *Fellows,* 22 N. H.
488; *Kennett's Petition,* 24 N. H. 139, 141.

As to the objections, from their previous laying out and the
writing of the petition, the nature of the proceding is to be consid-
ered. It was in substance and effect a rehearing of the same
question upon an amended petition, the nature of which was sug-
gested by the court or tribunal to pass upon it. The selectmen
had no authority to grant amendments as such. What they did
was in effect the same. Crowell ought not to object that he had
two opportunities instead of one to show that his land ought not
to be taken. And, finally, as to both of these objections, the
examining of the witness by Mr. Sulloway upon the merits was a
waiver. See cases before cited.

6. It requires a three-fourths vote to discontinue a cemetery.
G. L., c. 49, s. 4; *Grafton's Petition,* 22 N. H. 216.

*G. C. & G. K. Bartlett,* with whom were *Sulloway, Topliff &
O'Connor* and *Burnham & McAllister,* for the appellant. No dis-
qualified person should act upon such a petition, not even in the
issuing of an order of notice for a hearing. *Railroad* v. *Enfield,*
57 N. H. 508. It appears from the report that McGregor was
disqualified to act because D. W. Barker, one of the petitioners on
the first petition, was a brother of McGregor's wife, and also be-
cause he had, either directly or indirectly, formed an opinion and
was sensible of a prejudice, he having in April, prior to the presen-
tation of the petition to the selectmen, formed a favorable opinion
of the Crowell lot. McGregor must have known, when that peti-
tion was presented to the selectmen, that he was not indifferent,
that he was sensible of a prejudice in favor of the Crowell lot, and
that D. W. Barker, one of the petitioners, was a brother to his
wife. It was the duty of McGregor to decline to act; and it was

the duty of those who were qualified to fill vacancies, give the order of notice for a hearing, and to hear the parties and their witnesses, under oath; and the board must conduct themselves in a legal, proper, and discreet manner, or their decisions will be revoked on appeal.

By the facts found by the commissioners, it appears that notwithstanding the disqualification of McGregor, his place was not supplied by a qualified person, but that he joined in the order of notice with the other selectmen, and that he and Hinckley laid out the lot, not on the 16th day of May, nor at any adjourned hearing, or when Mr. Pillsbury, the other selectman, was present, but when they were by themselves, after having talked upon the subject with Washington Colby, one of the petitioners, and others. McGregor and Hinckley had no jurisdiction to lay out land for a public cemetery, and they acted in such an illegal and improper manner as to render their pretended taking void.

It was not alleged in the first petition that there was a public necessity for the establishment of a new cemetery, and that land necessary therefor could not be obtained in any suitable place at a reasonable price by contract with the owners; neither did McGregor and Hinckley, in their pretended taking and condemning of Crowell's land without his consent, find that land necessary for a new cemetery could not be obtained in a suitable place by contract with the owner. McGregor being disqualified to act in the decision of the case, and his place not being supplied by a qualified person, the board had no jurisdiction to take and condemn the land of the appellant for a public cemetery against his will. Cool. Con. Lim. 398.

It may be said that Crowell, who is now dead, by not objecting to the jurisdiction at the first hearing, waived his right of objecting to the same ever after; but this objection of jurisdiction cannot be waived. If not taken before the decision is rendered, it will avail in the appellate court, and the suit may be there dismissed on that ground. Cool. Con. Lim. 413, and cases cited.

The judge acting in such case is not simply proceeding irregularly, but he is acting without jurisdiction. And if one of the judges constituting a court is disqualified on this ground, the judgment will be void even though the proper number may have concurred in the result, not reckoning the interested party. *Ib.*

In *Richardson* v. *Welcome*, 6 Cush. 331, it was held to be sufficient ground for dismissing an action pending in the court of common pleas, on appeal from a justice of the peace, that the justice had an interest in the suit, etc., although the motion to dismiss was not made until the case was opened, and the ground of motion was known four days before. *Elder* v. *Dwight Manf. Co.*, 4 Gray 201, was an action brought by the plaintiff for his wages, before a justice of the peace for Hampden county, against the defendants, and returnable at the justice's office in Springfield. The defendants appeared, and

the justice, after trial, gave judgment for the plaintiff. The defendants appealed, and there moved that the action be dismissed for want of jurisdiction; and the court dismissed the same with costs. In this case counsel contended that the exception came too late, and because it was not claimed before the magistrate he waived the exception. *Shaw*, C. J., said this objection would have much force if the exception lay to any defect of form which might be amended, or any want of regularity in the service which the defendant may take advantage of or not. * * * But where the objection is that the court never had any authority to issue any process, or any jurisdiction over the subject or the parties, the proceeding is void. In *Edwards* v. *Russell*, 21 Wend. 63, where a justice of the peace has inadvertently issued process, or proceeded in the prosecution of the suit in which he is related to one of the parties by consanguinity or affinity, it is his duty, on his attention being called to the fact, to suspend all further proceedings. He cannot on that ground render judgment of nonsuit if the plaintiff be his relative, and if he does render such judgment it will be reversed. In *Foot* v. *Morgan*, 1 Hill 654, it was held that a justice of the peace, whose wife is the sister of A.'s wife, cannot take jurisdiction of a cause in which A. is the plaintiff in interest, though prosecuted in the name of another; and if he render judgment therein, it may be treated as absolutely void. *Cowen*, J., who delivered the opinion, says,—"It was said by counsel in behalf of the motion, that a party and juror having married sisters would be no cause of challenge,—but I presume hastily, for it is put among the commonest cases in the books as an instance of affinity which disqualifies." It was holden very recently, on a writ of error to parliament, that the sheriff's wife being sister to the plaintiff's wife was good cause of principal challenge to the array. *Markham* v. *Lee*, cited in *Mounson and West's Case*, 1 Leon. 89. The same thing is mentioned as the cause of challenge to a juror. Tri. per P. 188, Lond. ed. of 1766; 2 Rol. 654, par. 17.

Where a judge is disqualified to sit in a cause by reason of consanguinity to one of the parties, he cannot sit even by consent of both the parties, and if he do so the judgment will be vacated. *Oakley* v. *Aspinwall*, 3 N. Y. 547.

SMITH, J. By the order of reference, the commissioners were directed to report at the request of either party upon each question raised in the written reasons of appeal. The reasons of appeal alleged in the first appeal are,—1, that the appellant is unwilling that his land be taken and used as a cemetery, and that the selectmen did not first attempt to buy of him, or of others having land for a cemetery in suitable places which they were willing to sell; 2, that there was at the time the petition was presented, and at the time of the laying out, a dwelling-house of the appellant occupied by a tenant on the land taken; 3, that one of the petitioners was

a brother of the wife of one of the selectmen who laid out the cemetery, and other petitioners were first cousins of the same selectman; 4, that only the return of the laying out was recorded by the town-clerk; 5, that the damages were insufficient.

The last reason appears to have been abandoned at the hearing before the commissioners. Of the remaining reasons, the first and second may be regarded as exceptions to the jurisdiction of the selectmen over the subject-matter of the petition; the third, as an exception to their jurisdiction over the parties; and the fourth, as an exception to the laying out for defect in the proceedings.

The statute provides for the taking of land for a cemetery when "land necessary therefor cannot be obtained in any suitable place at a reasonable price by contract with the owner." G. L., *c.* 49, *s.* 2. The object of the statute is to enable a town to obtain suitable ground for a public cemetery when it cannot be obtained by contract with the land-owner. By "suitable place" was intended a place not only convenient and accessible, but adapted by nature for a burial-place, and capable of improvement and adornment creditable to the living and respectful to the memory of the dead. The commissioners as well as the selectmen have found that no other place is so suitable as the plaintiff's lot. What is a suitable place is a question of fact to be determined on a consideration of all the circumstances of the particular case. The term is a relative one. What may be a suitable place in one community may not be in another. By "any suitable place" the legislature meant nothing less than the most suitable place, or a place as suitable as any other, or a place as suitable as the town can afford to pay for.

The provision of Gen. Laws, *c.* 49, *s.* 2, that no cemetery shall be laid out within twenty rods of a dwelling-house, store, or other place of business, was designed for the benefit of those who might be unwilling to live or work within a shorter distance of a public burial-ground. The associations from closer proximity might be disagreeable. The value of their property or the profitableness of their business might be diminished. The sanitary influences of a nearer location might be injurious. In this case there was no building upon the lot petitioned for when the petition was filed. It appears to have been placed upon the lot for the purpose of defeating the petition. The building is of such a character that there may be a question whether it is a dwelling-house, store, or other place of business. It would seem unreasonable to hold that the statute was intended for the benefit of the land-owner under such circumstances. But however that may be, the statute does not forbid the condemnation of land with a dwelling-house upon it for a public cemetery, the public paying for the house if the owner chooses not to remove it. None of the evils which it was designed to prevent can happen, because by the taking of the land the destruction or removal of the house must follow. Necessity may demand the taking of such a lot when no other suitable one can be

had. When the land is condemned and the owner's damages are assessed and paid, the building can no longer be occupied by him, although the fee in the land may remain in him subject to the public easement of a burial-place, for his occupation of the land or building would be inconsistent with the public use for which the land was taken.

The board of selectmen had jurisdiction of the parties. If one of the board was disqualified by reason of his relationship to some of the petitioners, the jurisdiction of the board was not thereby ousted. They continued to have jurisdiction, although one of their number might be disqualified in this particular case. *Oakley* v. *Aspinwall*, 3 N. Y. 547, 562. The objection could be waived and was waived by the appellant going to a hearing on the merits, with full knowledge of the disability and without objection. It is claimed that consent will not confer jurisdiction. However this may be when applied to subject-matter, or to the case of a party who cannot sue or be sued in an inferior court (*Oakley* v. *Aspinwall, supra*, 562), this board had jurisdiction of the subject-matter and of the parties.

The fourth reason of appeal is not well founded. The fact is found that the petition, order of notice, and hearing were recorded by the town-clerk June 9, 1882. A certified copy among the papers, made a part of the case, shows seasonable service of the petition and order of notice on the appellant, but shows no service on the town-clerk and no posting of a copy at the town-house. The posting of a copy has been proved. No question was raised at the hearing as to whether a copy was left with the town-clerk or not. If no copy was left with him. the defect was one which the appellant could waive and did waive at the hearing by not then objecting. It is not easy to see what interest he had in that question. The leaving of a copy with the town-clerk would have given the appellant no additional information. It does not appear that any other person was interested, or objected.

The whole case having been heard *de novo* before the commissioners, it is unnecessary to consider other objections to the proceedings of the selectmen, none of them going to the question of jurisdiction. The offer to prove that the town had by major vote relinquished to the appellant all claim upon his land for a cemetery, was the offer to prove an immaterial fact. A cemetery can be discontinued only by a vote of three fourths of the voters present and voting. G. L., *c.* 49, *s.* 4.

With these views it is unnecessary to examine the objections to the proceedings of the selectmen upon the second petition. The decision of the selectmen upon the first petition is affirmed. The second appeal is dismissed.

*Case discharged.*

ALLEN, J., did not sit: the others concurred.